**DON'T TEAR IT DOWN, INC., et al.,**
**Plaintiffs,**

v.

**Walter E. WASHINGTON et al.,**
**Defendants.**

**Civ. A. No. 74–1823.**

United States District Court,
District of Columbia.

Aug. 26, 1975.

David Bonderman, Thomas B. Wilner, Arnold & Porter, Washington, D. C., for plaintiffs Don't Tear It Down and Frank H. Rich.

Robert Werdig, Asst. U. S. Atty., Washington, D. C., for plaintiff Pennsylvania Avenue Development Corp.

Martin Grossman, Asst. Corp. Counsel, Washington, D. C., for defendants Washington and Pifer.

J. Hampton Baumgartner, Jr., Bruce S. Mencher, Wilkes & Artis, Washington, D. C., for Benenson, Arnow and Benenson Capital Co.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, Chief Judge.

On December 10, 1974, the District of Columbia Court of Appeals filed an opinion in *Commissioner of District of Columbia v. Benenson*, 329 A.2d 437 (1974), in which the Court affirmed the District of Columbia Superior Court which had ordered defendants-appellants to issue to plaintiffs-appellees a permit to demolish the nonstructural elements of the Willard Hotel. The parties to that action are respectively the government and private defendants herein. Plaintiffs in this action seek a declaratory judgment that the Pennsylvania Avenue Development Corporation Act (Pub.L.No.92–578, 86 Stat. 1266 (Oct. 27, 1972), *as amended*, Pub.L.No.93–427, 88 Stat. 1170 (Oct. 1, 1974)) prohibits the defendant officials of the District of Columbia government (government defendants) from issuing or defendants Benenson, Arnow, and Benenson Capital Co. (private defendants) from receiving such a permit without prior certification from the Pennsylvania Avenue Development Corporation (PADC). The plaintiffs also ask for injunctive relief to prevent the private defendants from obtaining a permit to undertake the above described work without receiving prior certification from the PADC. In a memorandum and order of January 8, 1975, the Court ordered pursuant to Fed.R.Civ.P. 19 that the Pennsylvania Avenue Development Corporation be made a party, and on January 10, 1975, PADC filed a complaint entering its appearance as a party plaintiff. Currently before the Court are motions for summary judgment by all plaintiffs and a cross motion for summary judgment by the private defendants.

In light of an order dated February 20, 1975, denying reconsideration of its December 10, 1974 decision in which the District of Columbia Court of Appeals noted that its earlier opinion was limited to an interpretation of the Shipstead-Luce Act, the government defendants have by letter of February 26, 1975, represented to the Court that they will not issue a permit to the private defendants until prior certification is received from the PADC. While there is therefore no longer a controversy between the plaintiffs and the government defendants, the private defendants continue to dispute plaintiffs' interpretation of the PADC Act and continue to insist that they have a right to obtain a permit allowing them to demolish the nonstructural elements of the Willard Hotel.

The private defendants raise threshold objections to the private plaintiffs' standing and to the Court's jurisdiction in this case. The Court finds, however, that the private plaintiffs have alleged sufficient injury in their complaint to establish their standing to bring this action. *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). The Court further finds that plaintiffs' claim arises under a federal statute, the Pennsylvania Avenue Development Corporation Act, that more than $10,000 is in controversy, and therefore that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (1970).

On October 27, 1972, Congress enacted the Pennsylvania Avenue Development Corporation Act in an effort to re-

vitalize the portion of Pennsylvania Avenue between the White House and the Capitol, including the land on which the Willard Hotel is located. 40 U.S.C. §§ 871 *et seq.* (Supp. III, 1973). The Act established the Pennsylvania Avenue Development Corporation which was funded by Congress and required to prepare a comprehensive revitalization plan. 40 U.S.C. §§ 872, 874 (Supp. III, 1973). Congress also provided for a moratorium on new construction within the area unless the PADC gave prior certification that such construction was or was expected to be consistent with its development plan. 42 U.S.C. § 876(b) (Supp. III, 1973). The moratorium provision as originally enacted expired during October 1973. However, on October 1, 1974, Congress resurrected the moratorium provision in order to "preclude non-conforming construction within the area while the plan is under Congressional review." Pub.L.No.93–427, § 2, 88 Stat. 1170, H.R.Rep.No.93–1215, 1974 *U.S.Cong. & Admin.News*, at p. 5414.

The moratorium provision contained in section 7(b) of the Act, as amended, states as follows:

> . . . no new construction (including substantial remodeling, conversion, rebuilding, enlargement, extension, or major structural improvement of existing building, but not including ordinary maintenance or remodeling or changes necessary to continue occupancy) shall be authorized or conducted within the development area except upon prior certification by the Corporation that the construction is, or may reasonably be expected to be, consistent with the carrying out of the development plan for the area; *Provided,* That if the development

plan for the area does not become effective under the provisions of section 5 by June 30, 1975, this subsection shall be of no further force and effect until such time as the development plan does become effective under that section.

40 U.S.C. § 876(b), *as amended.* On May 19, 1975, the Pennsylvania Avenue Development Plan became effective pursuant to section 5, and therefore the provisions of section 7(b) remain in effect. (Affidavit of Peter T. Meszoly, General Counsel, Pennsylvania Avenue Development Corporation, filed June 13, 1975).[1]

The Court is presented with two issues on the merits: (1) whether section 7(b) of the PADC Act by its terms covers the demolition of the nonstructural elements of the Willard Hotel; and (2) whether due to the absence of any moratorium provision between October 1973 and October 1974, private defendants obtained a vested interest in a permit to demolish the Willard Hotel.[2]

▮ The private defendants in this action applied to the District of Columbia government for a permit to allow them to demolish the nonstructural elements of the Willard Hotel in order to prepare necessary drawings for the remodeling of the building. Memorandum of Points and Authorities of Defendants in Support of Motion to Dismiss and in Opposition to Plaintiff's Motion for Preliminary Injunction, Exhibits A–1 & A–2. It is their intention to remodel the Willard Hotel into a modern income producing building. *Benenson v. Commissioner of the District of Columbia,* C.A. 10837–73 (D.C.Super.Ct., Complaint ¶8). They argue that since they have asked only for permission to raze or demolish the nonstructur-

---

1. A certified copy of the Plan, submitted as Exhibit A to the PADC's motion for preliminary injunction, indicates an intention to preserve the Willard Hotel if the necessary funds can be obtained. The Pennsylvania Avenue Plan 1974, at 28, 66 n. 4(g), 83.

2. At a status hearing held on June 16, 1975, counsel for the private defendants specifical-

ly stated that his clients did not claim that section 7(b) of the PADC Act was unconstitutional. Moreover, counsel was informed that if the private defendants wish to pursue a claim of admittedly more than $10,000 for wrongful taking of their property without just compensation, the proper forum is the Court of Claims, not this Court. 28 U.S.C. §§ 1346, 1491 (1970).

al elements of the Willard Hotel, they are not covered by the ban on "new construction" contained in section 7(b) of the PADC Act. The Court disagrees.

Consistent with the comprehensive planning responsibility given to the PADC by its enabling act, "new construction" in the moratorium provision is defined broadly to include substantial remodeling, conversion, rebuilding, enlargement, extension, or major structural improvements. 40 U.S.C. § 876 (b), *as amended*. The only activities excluded from this broad definition of new construction are ordinary maintenance or remodeling or changes necessary to continue occupancy. 40 U.S.C. § 876(b), *as amended*.

The Court finds that the private defendants' efforts to remodel the Willard Hotel into a modern income producing building are clearly covered by the prohibition on new construction as that term is defined by the Act. Moreover, the broad definition of "new construction" in the Act covers not only the erection of something new in the area but also construction work that is newly begun. Thus the private defendants' efforts to have the Court ignore their stated intention to build a modern income producing building on the steel girders and joists once the nonstructural elements are demolished is to no avail.

The private defendants applied for their permit to demolish the nonstructural elements of the Willard Hotel on October 26, 1973, which was also the expiration date of the PADC moratorium provision as originally enacted. On June 11, 1974, an order was entered in the Superior Court requiring the government defendants to issue a permit to the private defendants, plaintiffs in that action. *Benenson v. Commissioner of the District of Columbia*, C.A. 10837–73 (D.C.Super.Ct., June 11, 1974). This order was affirmed by the District of Columbia Court of Appeals on December 10, 1974. The moratorium provision was revised on October 1, 1974, between the June 11, 1974 order of the Superior Court and its affirmance by the District of Columbia Court of Appeals.[3]

Private defendants rely on the above chronology to argue that since there was no moratorium in effect when their permit was processed, denied, and suit instituted, the later reenactment of the moratorium provision contained in section 7(b) should have no effect on their vested right to obtain such a permit. They cite three municipal zoning cases which suggest that an applicant's right to a building permit cannot be affected by a zoning law enacted subsequent to the filing of the permit application. *Hull v. Hunt*, 53 Wash.2d 125, 331 P.2d 856 (1958); *State v. Wickliffe*, 80 N.E. 2d 200 (Ohio App. 1947); *State v. Campbell*, 113 N.E.2d 601 (Ohio App. 1952). However, as the Court in *Hull v. Hunt* noted, this is the minority rule, and private defendants cite no case suggesting that it is the law in this jurisdiction.

██ But whatever the law concerning the effect of a local zoning ordinance, it is clear that federal legislation can regulate future action in a way that interferes with rights previously acquired. *Fleming v. Rhodes*, 331 U.S.

3. As noted above, the District of Columbia Court of Appeals stated in an order of February 20, 1975, denying reconsideration of its December 10, 1974 decision, that the only issue before it was whether the trial court's order was proper under the Shipstead-Luce Act. The private defendants filed their suit in the Superior Court on December 20, 1973, after the moratorium provision in the PADC Act had expired, and the case was argued to the District of Columbia Court of Appeals on September 11, 1974, before the moratorium provision was reenacted. While the Court of Appeals' decision was rendered after the moratorium provision was reenacted on October 1, 1974, it appears that its application was never raised as an issue in that court. *See Commissioner of the District of Columbia v. Benenson*, No. 8572 (D.C.Ct.App. Order of Feb. 20, 1975); *see* Memorandum of Points and Authorities in Support of Plaintiffs' [PADC] Motion for Preliminary Injunction at 9.

100, 107, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947); *Federal Housing Administration v. The Darlington, Inc.,* 358 U.S. 84, 91, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958). Section 7(b) of the Pennsylvania Avenue Development Corporation Act, a federal statute, currently prohibits defendants from *authorizing or conducting* the contemplated demolition and remodeling of the Willard Hotel. Thus, even assuming that the private defendants obtained some type of vested right when the moratorium provision was not in effect, they must now comply with the PADC Act.

The Court, therefore, will grant plaintiffs' motion for summary judgment and will grant declaratory and injunctive relief. However, in light of the government defendants' letter to this Court dated February 26, 1975, which indicates agreement with plaintiffs' position herein, relief as to those defendants is no longer necessary.

In light of the foregoing, it is this 26th day of August, 1975,

Declared that Section 7(b) of the Pennsylvania Avenue Development Corporation Act (40 U.S.C. § 876(b) (Supp. III, 1973), *as amended,* Pub.L.No.93–427, § 2, 88 Stat. 1170) prohibits defendants Benenson, Arnow, and Benenson Capital Co. from demolishing, converting, removing or otherwise altering the exterior facade of the Willard Hotel without prior certification from the Pennsylvania Avenue Development Corporation that such work is consistent with the development plan for the area; and

Ordered:

1. That plaintiffs' motions for summary judgment be and the same are hereby granted;

2. That defendants Benenson, Arnow, and Benenson Capital Co.'s motion for summary judgment be and the same is hereby denied; and

3. That defendants Benenson, Arnow, and Benenson Capital Co. be and the same are hereby enjoined from demolishing, converting, removing, or otherwise altering the exterior facade of the Willard Hotel without prior certification from the Pennsylvania Avenue Development Corporation that such work is consistent with the development plan for the area.