## FEDERAL HOUSING ADMINISTRATION
## v. THE DARLINGTON, INC.

No. 13.   Argued October 13, 1958.—Decided November 24, 1958.

*Alan S. Rosenthal* argued the cause for appellant. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Doub*.

*J. C. Long* argued the cause for appellee. With him on the brief were *W. Turner Logan* and *Heman H. Higgins, Jr.*

Mr. Justice Douglas delivered the opinion of the Court.

This case involves a construction of § 608 of the National Housing Act, 56 Stat. 303, 12 U. S. C. § 1743, as amended by § 10 of the Veterans' Emergency Housing Act of 1946, 60 Stat. 207, 214, and the Regulations issued thereunder. The aim of the Act as stated in § 608 (b) (2) is to provide housing for veterans of World War II and their immediate families. That end is to be achieved by authorizing the Federal Housing Administration to insure mortgages covering those projects. § 608 (a). Mortgagors, eligible for insurance, are to be approved by the agency, which is empowered to require them "to be regulated or restricted as to rents or sales, charges, capital structure, rate of return, and methods of operation." § 608 (b)(1).

Appellee is a South Carolina corporation formed in 1949 to obtain FHA mortgage insurance for an apartment house to be constructed in Charleston. The insurance issued and the apartment was completed. The Regulations, promulgated under the Act (24 CFR § 280 *et seq.*), provide that the mortgaged property shall be "designed principally for residential use, conforming to standards satisfactory to the Commissioner, and consisting of not less than eight (8) rentable dwelling units on one site . . . ." § 280.34. The Regulations further provide:

> "No charge shall be made by the mortgagor for the accommodations offered by the project in excess of a rental schedule to be filed with the Commissioner and approved by him or his duly constituted representative prior to the opening of the project for rental, which schedule shall be based upon a maximum average rental fixed prior to the insurance of the mortgage, and shall not thereafter be changed

except upon application of the mortgagor to, and the written approval of the change by, the Commissioner." § 280.30 (a).

Veterans and their families are given preference in the rentals; and discrimination against families with children is prohibited. § 280.24.

Appellee submitted to FHA its schedule of monthly rates for its different types of apartments. No schedule of rates for transients was supplied. Indeed there was no representation to FHA that any of the apartments would be furnished. But an affiliate of appellee without FHA knowledge furnished a number of apartments; and some were leased to transients on a daily basis at rentals never submitted to nor approved by FHA, part of the rental going to the affiliate as "furniture rental." Though appellee, as required by the Regulations (§ 280.30 (f)), made reports to FHA, it made no disclosure to the agency that it had either furnished some apartments or rented them to transients. But it continued to rent furnished apartments to transients both before and after 1954 when § 513 was added to the Act. 68 Stat. 610, 12 U. S. C. (Supp. V) § 1731b. The new section contained in subsection (a) the following declaration of congressional purpose:

"The Congress hereby declares that it has been its intent since the enactment of the National Housing Act that housing built with the aid of mortgages insured under that Act is to be used principally for residential use; and that this intent excludes the use of such housing for transient or hotel purposes while such insurance on the mortgage remains outstanding." And see H. R. Rep. No. 1429, 83d Cong., 2d Sess., p. 17; S. Rep. No. 1472, 83d Cong., 2d Sess., p. 31.[1]

---

[1] The Act provides that, except for certain exceptions not relevant here, no new or existing multifamily housing with respect to which

Appellee persisted in its rental of space to transients. Appellant FHA persisted in maintaining that the practice was not authorized. In 1955 appellee brought this suit for a declaratory judgment that so long as it operates its property "principally" for residential use, keeps apartments available for extended tenancies, and complies with the terms of the Act in existence at the time it obtained the insurance, it is entitled to rent to transients. The District Court gave appellee substantially the relief which it demanded. 142 F. Supp. 341. On appeal, we remanded the cause for consideration by a three-judge court pursuant to 28 U. S. C. § 2282. 352 U. S. 977. On the remand a three-judge court adopted the earlier findings and conclusions of the single judge, 154 F. Supp. 411, attaching however certain conditions to the decree unnecessary to discuss here. It held that rental to transients was not barred by § 608 and that § 513 (a) as applied to respondent was unconstitutional. The case is here on direct appeal. 28 U. S. C. § 1253.

We take a different view. We do not think the Act gave mortgagors the right to rent to transients. There is no express provision one way or the other; but the limitation seems fairly implied. We deal with legislation passed to aid veterans and their families,[2] not with a law to promote the hotel or motel business. To be sure, the Regulations speak of property "designed principally for residential use" (§ 280.34)—words that by themselves would not preclude transient rentals. But those words,

---

a mortgage is insured by the FHA shall be operated for transient purposes. § 513 (b). The Commissioner is authorized to define "rental for transient or hotel purposes" but in any event rental for any period less than 30 days constitutes rental for such purposes. § 513 (e).

[2] S. Rep. No. 1130, 79th Cong., 2d Sess.; H. R. Rep. No. 1580, 79th Cong., 2d Sess.

as the Senate Report on the 1954 Amendment indicates,[3] were evidently used so as not to preclude some commercial rentals. Moreover, the Regulation goes on to describe the property that is insured as "dwelling units." *Id.* The word "dwelling" in common parlance means a permanent residence. A person can of course take up permanent residence even in a motel or hotel. But those who come for a night or so have not chosen it as a settled abode. Yet the idea of permanency pervades the concept of "dwelling." That was the construction given to § 608 by FHA in 1947 when it issued its book Planning Rental Housing Projects. "Housing" was there interpreted to mean "dwelling quarters for families—quarters which offer complete facilities for family life." There again the quality of permanency is implicit.[4] And if the

---

[3] S. Rep. No. 1472, 83d Cong., 2d Sess., p. 31, states:

"Your committee does not believe the spirit of this intent is violated by the operation of a commercial establishment included to serve the needs of families residing in rental projects operated as permanent residential housing projects (as distinguished from those operated to provide transient accommodations) but it firmly- believes that the operation of such establishments should not be conducted in such a manner as to convert the use of all or any portion of the housing units in the project from permanent, residential use to a project furnishing transient accommodations. . . ."

[4] The same tone is exhibited in the Committee Reports on the various amendments to § 608. For instance, in reporting the Veterans' Emergency Housing Act of 1946 the Senate Committee on Banking and Currency stated:

"Since a main purpose of these provisions [authorizations of additional insurance] is to reduce the risks assumed by builders in order to encourage a large volume of *housing,* the committee calls special attention to the fact that this portion of the bill places emphasis upon *rental housing.* It is the specific intent of the committee that those in charge of the program shall make every reasonable effort to obtain a substantial volume of *rental housing*—or in any event *housing* held for rental during the emergency—through the operation of title VI, both with respect to multifamily units and individual

provisions of appellee's charter are deemed relevant, it is not without interest to note the requirement that "Dwelling accommodations of the corporation shall be rented at a maximum average rental per room per month. . . ." Again the focus is on permanency.

In 1946 FHA made provisions in its application forms for estimates of annual operating expenses of the project. None of the expenses incident to transient accommodations—such as linen supply and cleaning expenses—were listed. Once more we may infer that the insurance program was not designed in aid of transients.

In a letter to field offices in 1951 explaining the criteria to be considered in passing on rent schedules and methods of operation, the FHA instructed them to: ". . . bear in mind that the objective of this Administration is the production of housing designed for occupancy of a relatively permanent nature and that transient occupancy is contrary to policy. No approval will be granted with respect to a proposal anticipating transient occupancy." That interpretation of the Act is clear and unambiguous, and, taken with the Regulations, indicates that the authority charged with administration of the statute construed it to bar rental to transients.

Moreover, as already mentioned, prior approval by FHA of all rental schedules was always required by § 280.30 of the Regulations and appellee never obtained nor sought approval of a schedule of rents for transients.

It is true that FHA felt it had the authority to approve rental schedules for transients. It gave such approval in

_____

units. While home ownership is to be encouraged, a large percentage of veterans do not yet possess the certainty of income or of location, or the financial means, to purchase homes at this time. The bill as approved by the House of Representatives included this attention to *rental housing*." S. Rep. No. 1130, 79th Cong., 2d Sess., p. 8. (Italics added.)

a dozen or more instances where it felt the public interest required it. We need not stop to inquire whether FHA had that authority.[5] We have said enough to indicate that no right or privilege to rent to transients is expressly included in the Act nor fairly implied. The contemporaneous construction of the Act by the agency entrusted with its administration is squarely to the contrary. In circumstances no more ambiguous than the present we have allowed contemporaneous administrative construction to carry the day against doubts that might exist from a reading of the bare words of a statute. See *United States* v. *American Trucking Assns.*, 310 U. S. 534, 549; *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294, 315. When Congress passed the 1954 Amendment, it accepted the construction of the prior Act which bars rentals to transients. Subsequent legislation which declares the intent of an earlier law is not, of course, conclusive in determining what the previous Congress meant. But the later law is entitled to weight when it comes to the problem of construction. See *United States* v. *Stafoff*, 260 U. S. 477, 480; *Sioux Tribe* v. *United States*, 316 U. S. 317, 329–330. The purpose of the Act, its administrative construction, and the meaning which a later Congress ascribed to it all point to the conclusion that the housing business to be benefited by FHA insurance did not include rental to transients.

If the question be less clear and free from doubt than we think, it is still one that lies in the periphery where vested rights do not attach. If we take as our starting point what the Court said in the *Sinking-Fund Cases*, 99 U. S. 700, 718—"Every possible presumption is in favor of the validity of a statute, and this continues until

---

[5] The 1954 Amendment expressly gave FHA that power in certain limited situations. See § 513 (b).

the contrary is shown beyond a rational doubt"—we do not see how it can be said that the 1954 Act is unconstitutional as applied. Appellee is not penalized for anything it did in the past. The new Act applies prospectively only. So there is no possible due process issue on that score. As stated in *Fleming* v. *Rhodes,* 331 U. S. 100, 107, "Federal regulation of future action based upon rights previously acquired by the person regulated is not prohibited by the Constitution. So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts." [6]

Moreover, one has to look long and hard to find even a semblance of a contractual right rising to the dignity of the one involved in *Lynch* v. *United States,* 292 U. S. 571. The Constitution is concerned with practical, substantial rights, not with those that are unclear and gain hold by subtle and involved reasoning. Congress by the 1954 Act was doing no more than protecting the regulatory system which it had designed. Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end. Cf. *Veix* v. *Sixth Ward Assn.,* 310 U. S. 32; *Keefe* v. *Clark,* 322 U. S. 393. Invocation

---

[6] In *Fleming* a landlord had obtained a judgment of eviction in a state court prior to the enactment of the Price Control Extension Act, under which the Administrator had promulgated rules prohibiting removal of the tenants from the leased premises on the grounds asserted by the landlord. It was held that the landlord could be enjoined from evicting the tenants under the state judgment, as any "vested" rights by reason of the state judgment were acquired subject to the possibility of their dilution through Congress' exercise of its paramount regulatory power.

of the Due Process Clause to protect the rights asserted here would make the ghost of *Lochner* v. *New York,* 198 U. S. 45, walk again.

*Reversed.*

MR. JUSTICE STEWART took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, dissenting.

Here we have not the application of some broad, generalized legal conception, either of a statutory nature, like "restraint of trade" in the Sherman Law, or a constitutional provision, like "due process of law" or "the equal protection of the laws." Such conceptions do not carry contemporaneous fixity. By their very nature they imply a process of unfolding content.

Our immediate problem is quite different. The pre-1954 Housing Act does not leave us at large for judicial application of a generalized legislative policy in light of developing circumstances. The pre-1954 statute deals with a particularized problem in a particularized way. It presents the usual question of statutory construction where language is not clear enough to preclude human ingenuity from creating ambiguity. It is outside the judicial function to add to the scope of legislation. The task is imaginatively to extrapolate the contemporaneous answer that the Legislature would have given to an unconsidered question; here, whether rentals to transients were totally prohibited. It was not until 1954 that the Congress did deal with the question of the right of apartment-house owners to rent even a small number of apartments to transients without even remotely seeking to evade or to disadvantage the interests of veterans in whose behalf the Government, through the Federal Housing Administration, insured the mortgages of private owners. The opinions of the District Court and my

brother HARLAN seem to me compelling on the construction of the pre-1954 legislation.

This brings me to the validity of the 1954 enactment which presents for me a much more difficult question than that of the problem of statutory construction just considered. This is so because of the very weighty presumption of constitutionality that I deem it essential to attribute to any Act of Congress. This case falls between such cases sustaining the retroactive validity of legislation adversely affecting an existing interest as *Paramino Co.* v. *Marshall,* 309 U. S. 370, and *Fleming* v. *Rhodes,* 331 U. S. 100, on the one hand, and *Lynch* v. *United States,* 292 U. S. 571, on the other. While, to be sure, differentiation between "remedy" and "right" takes us into treacherous territory, the difference is not meaningless. The two earlier cases cited may fairly be deemed to sustain retroactive remedial modifications even though they affect existing "rights," while the *Lynch* case is a clear instance of the complete wiping out of what Mr. Justice Brandeis, in his opinion for the Court, called "vested rights." 292 U. S., at 577. Insofar as the 1954 Act applied to the earlier Darlington mortgage, it did not completely wipe out "vested rights." But on the proper construction of § 608, in the circumstances found by the District Court and not here challenged, the unavoidable application of the 1954 Act to the Darlington mortgage did substantially impair the "vested rights" of respondent. I would be less than respecting the full import of the *Lynch* case did I not apply it to the present situation.

Accordingly, I join MR. JUSTICE HARLAN's opinion.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANKFURTER and MR. JUSTICE WHITTAKER join, dissenting.

The question in this case is whether appellee Darlington is entitled to rent to transients (that is, so far as this case

is concerned, for periods of less than 30 days) a small number of apartments in its building, which is covered by a mortgage insured by the FHA. Darlington's FHA mortgage was consummated and insured in December 1949. At that time neither the controlling statute, § 608 of the National Housing Act, 56 Stat. 303, as amended, 12 U. S. C. § 1743, nor the regulations issued thereunder, 24 CFR § 280 *et seq.*, contained any provision prohibiting rentals to transients. Such provisions are found for the first time in § 513 of the Housing Act of 1954, 68 Stat. 610, 12 U. S. C. (Supp. V) § 1731b, passed some five years after this mortgage was made.

A three-judge District Court, largely adopting the findings and conclusions of the single district judge before whom this case was originally heard, held that as the law stood in 1949, when the mortgage here involved was issued, Darlington was not forbidden to make *occasional* transient rentals, and that the Federal Housing Administrator may not now prohibit such rentals since that would involve an unconstitutional retroactive application of the relevant provisions of the Housing Act of 1954.[1] This

---

[1] The opinion of the district judge who first heard this case is reported at 142 F. Supp. 341. Subsequent references to the decision below are to that opinion.

The three-judge District Court's opinion is reported at 154 F. Supp. 411. Its decree imposed on Darlington (plaintiff) the following conditions:

"(a) The plaintiff shall not lease, or make available for leasing, for terms of less than thirty days more than 15% of the total number of apartments in the project.

"(b) The plaintiff shall not increase its schedule of rents and charges now in effect for rentals of apartments for less than thirty days and for furnishings and other incidentals offered or supplied in connection therewith.

"(c) The plaintiff shall not advertise itself as a 'hotel', nor shall it through the use of any advertising medium, the circulation of letters, the maintenance of signs, or otherwise solicit the business of

Court now holds that under the statute and regulations as they stood in 1949 Darlington was never entitled to make *any* transient rentals, and that in any event the prohibitory provisions of the 1954 Act may be applied to prevent such rentals. From these holdings I must dissent.

In construing the earlier statute the Court, in my opinion, has proceeded on an erroneous premise. The Court holds that "no right or privilege to rent to transients is expressly included in the [pre-1954] Act nor fairly implied." In my view, however, the true issue is not whether the statute under which Darlington's mortgage was insured *gave* the right to an FHA-insured mortgagor to make such rentals, but rather whether it *prohibited* such a mortgagor from making them. Given this as the issue, it seems to me that the record is compelling against the Court's conclusion as to § 608, that the provisions of the 1954 Act cannot be applied to one in Darlington's position, and that the decision below was clearly right.

1. As already noted, § 608 and the regulations implementing it were barren of any provision excluding rentals to transients at the time Darlington's mortgage was insured by the FHA.

2. The District Court found that (1) Darlington's rentals to transients even at the height of Charleston's transient season constituted no more than ten percent of the building's total available occupancy; (2) "no person entitled to priority has ever been rejected, and no one desiring so-called 'permanent' occupancy of an apart-

---

transients for less than thirty days occupancy, or advise the general public of its willingness to provide accommodations for transients for periods of less than thirty days occupancy.

"(d) The plaintiff shall not provide occupants of its project with food or beverage room service, or maintain regular bell boy service."

The District Court retained jurisdiction of the cause for the purpose of effectuating its decree.

ment has been required to wait any time to obtain same"; and (3) Darlington "does not advertise as a hotel, has no license as such, and no signs appear indicating its willingness to accept transients." 142 F. Supp., at 349. According the utmost effect to the conceded purpose of § 608 to provide housing for World War II veterans and their families, and to the recitals in the regulations to the effect that property subject to FHA mortgages shall be "designed *principally* for residential use" (italics supplied), I am unable to understand why Darlington's practices, as found by the lower court, should be regarded as violative of either the letter or spirit of these statutory or regulatory provisions. Not until the passage of the 1954 Act do we find any suggestion that the words "designed principally for residential use" were, in the language of the Court, "evidently used so as not to preclude some commercial [as distinguished from transient] rentals."

3. As the FHA conceded and the District Court found, nothing in Darlington's charter, bylaws, mortgage, or mortgage note, all of which were subject to the FHA's advance approval, expressly restricted its right "to lease apartments in its project for periods of less than thirty (30) days." The only period of rental limitation appearing in any of these instruments was the following, contained in Darlington's charter: "Dwelling accommodations of the [appellee] shall not be rented for a period in excess of three years . . . ." 142 F. Supp., at 346. It is too much to attribute to the word "dwelling," as the Court now in effect does, an implied prohibition of less-than-30-days rentals.

4. The FHA had in a number of instances before 1954 actually given specific approval to less-than-30-days rentals by insured mortgagors where veteran demand for housing had fallen off, and when in 1955 Darlington inquired of the FHA the basis of its position that less-than-

30-days rentals by such mortgagors were not permissible the agency simply referred appellee to the provisions of the Housing Act of 1954. These events conclusively show that the Housing Administration did not construe the statute or regulations before 1954 to prohibit transient rentals altogether.

5. There is nothing in this record to indicate that Darlington was engaged in any kind of a scheme to subvert the purposes of this federal housing legislation. Its occasional transient rentals seem to have been nothing more than an effort to plug the gap in its revenues left by a falling off of the demand for long-term apartment space, and do not depict a *sub rosa* hotel operation.

Upon these undisputed facts, which are reinforced by other factors detailed in the two opinions below, I can find no basis for impugning the soundness of the District Court's holding that under the law as it existed at the time Darlington embarked upon this project nothing prohibited it from making the occasional transient rentals shown by this record. The 1954 Act was new, and not merely confirmatory, legislation.

Hence I consider that the FHA's position in this case must stand or fall on whether the less-than-30-days rental provision of the 1954 Act, which in terms applies to mortgagors insured before as well as after the Act's effective date (see 12 U. S. C. (Supp. V) § 1731b (b)), can be given application to Darlington to increase the obligations assumed by it under its 1949 contract with the United States. I do not think it can. As the District Court correctly put it: "When the United States enters into contractual relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." 142 F. Supp., at 351. See *Lynch* v. *United States*, 292 U. S. 571; *Sinking-Fund Cases*, 99 U. S. 700, 718. What was said in the *Lynch* case as to contracts of war-risk insurance applies

here: "As Congress had the power . . . to issue them, the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal police power or some other paramount power." 292 U. S., at 579. I do not understand the Housing Administration to contend that the United States possesses general regulatory power over appellee outside the contractual relationship, and the Court has pointed to no such "paramount power" by which the imposition of the 1954 Act's prohibitions might be justified in this case. Under these circumstances I see no reason for disregarding the principles set forth in the cases cited, particularly when the District Court with ample justification found that "the 1954 Act is designed to afford relief for private interests, as distinguished from public purposes . . . ." 142 F. Supp., at 353.[2] Indeed the Court's treatment of this case seems to reinforce my view about the 1954 Act; else why all this straining to bring the matter under the pre-1954 statute?

I would affirm.

---

[2] This fact is demonstrated by the rather unusual provision of the 1954 Act which gives hotel operators and owners the right to seek federal court injunctions against violations of the transient rental prohibition of the statute. 68 Stat. 611, 12 U. S. C. (Supp. V) § 1731b (i). See also the testimony of Arthur J. Packard and Earl M. Johnson, respectively Chairman of the Board and Treasurer of the American Hotel Association, before the congressional committees considering the bills which became the Housing Act of 1954. Hearings before the Senate Committee on Banking and Currency, 83d Cong., 2d Sess., on S. 2889, S. 2938, S. 2949, pp. 654–661; Hearings before the House Committee on Banking and Currency, 83d Cong., 2d Sess., on H. R. 7839, pp. 507–515.