WYOMING HOSPITAL ASSOCIATION, Bishop Randall Hospital, Campbell County Memorial Hospital, Community Hospital, Converse County Memorial Hospital, De Paul Hospital, Fremont County Memorial Hospital, Hot Springs County Memorial Hospital, Ivinson Memorial Hospital, Johnson County Memorial Hospital, Memorial Hospital of Carbon County, Memorial Hospital of Laramie County, Memorial Hospital of Natrona County, Memorial Hospital of Sheridan County, Memorial Hospital of Sweetwater County, Niobrara Memorial Hospital, Powell Hospital, T.C.H.D.—St. John's Hospital, Uinta County Memorial Hospital, Waskakie Memorial Hospital, Weston County Memorial Hospital, West Park County Hospital District, Plaintiffs,

v.

Patricia R. HARRIS, Secretary of the United States Department of Health and Human Services, and the United States Department of Health and Human Services, Defendants.

No. C80–0345B.

United States District Court,
D. Wyoming.

Oct. 21, 1981.

James H. Barrett, Franklin D. Bayless, and Rhonda Woodard, of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, Wyo., for plaintiffs.

Shalom Brilliant, Dept. of Justice, Civ. Div., Washington, D. C., Francis Leland Pico, Asst. U. S. Atty., Cheyenne, Wyo., for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come on for hearing before the Court upon a Motion for Summary Judgment filed by the Plaintiffs and a Cross-Motion for Summary Judgment filed by the Defendants; the Plaintiffs appearing by and through their attorneys James H. Barrett, Esq., Franklin D. Bayless, Esq., and Rhonda Woodard, and the Defendants appearing by and through their attorneys Shalom Brilliant, Esq., and Francis Leland Pico, Esq.; the Court, having reviewed the pleadings, exhibits, affidavits and briefs filed herein, having heard the arguments of counsel in support of and in opposition to the motions, and having taken the matter under advisement, and now, being fully advised in the premises finds, as follows:

## FINDINGS OF FACT

This suit was brought by the Wyoming Hospital Association, on behalf of its institutional members, and by twenty-two (22) individual Wyoming hospitals, seeking declaratory and injunctive relief against the enforcement of new regulations issued under the "Hill-Burton" construction assistance program. The regulations were passed pursuant to Title VI and Title XVI of the Public Health Service Act, 42 U.S.C. § 291 et seq., and govern the manner of compliance with certain assurances made by each hospital on receipt of Hill-Burton construction funds. These assurances deal with the provision of hospital services to indigent patients and nondiscriminatory access. In the past, the assurances were complied with through an "open door" policy, by which the hospitals certified that no person would be denied medical attention based on the inability to pay. Under the new regulations, the "open door" policy has been replaced by strict compliance guidelines which, if unfulfilled in any particular year, will be carried forward indefinitely until the hospital has fully met its indigent care requirements.

Plaintiffs seek judicial review of the regulations promulgated by the Department of Health and Human Services (HHS) under 5 U.S.C. § 706. (See Title Page, Plaintiffs' Memorandum in Support of Motion for Summary Judgment.) Although not so designated in their Memorandum, Plaintiffs arguments will be examined under three of the subsections of 5 U.S.C. § 706 for purposes of this Order. To the extent that it is contended that the new regulations constitute a breach of an alleged contract that exists between each of the participating hospitals and the government, this challenge appears to fall within 5 U.S.C. § 706(2)(A), by which agency action may be declared invalid if "not in accordance with law." Plaintiffs also maintain that the new requirements are unconstitutional as having

impaired the obligation of a contract and having been applied retroactively. This argument raises an issue under 5 U.S.C. 706(2)(B), which addresses agency action which is "contrary to constitutional right, power, privilege, or immunity." Finally, Plaintiffs argue that the regulations amount to an administrative act "in excess of statutory jurisdiction, authority, or limitations..." under 5 U.S.C. § 706(2)(C). Each of these components of the Plaintiffs' case shall be discussed in turn.

## THE VALIDITY OF THE REGULATIONS AS A MATTER OF CONTRACT LAW AND UNDER 5 U.S.C. § 706(2)(A)

Plaintiffs maintain that the obligations imposed on the hospitals upon receipt of funds under the Hill-Burton Act were based on a contract that was made by approval of their applications in accordance with the Act. Thus, they argue, the assurances required with regard to indigent care and community service became a part of that contract and were governed by the statutes and regulations in effect at that time. Plaintiffs direct the Court to cases in which federal courts have characterized the relationship between a hospital receiving Hill-Burton funds and the government as contractual. Such was the holding in *Euresti v. Stenner*, 458 F.2d 1115 (10th Cir., 1972), which involved an action by indigent patients to enforce their rights to medical care as third-party beneficiaries to the hospitals' Hill-Burton contract. The court noted, however, that a contractual relationship would not be required to enforce their rights to medical care. On similar facts, the court in *Corum v. Beth Israel Medical Center*, 359 F.Supp. 909 (S.D.N.Y., 1973), relied on language in *Euresti* to find a contractual relationship intended to benefit indigent patients. Finally, Judge Pell, in his concurring and dissenting opinion filed in *American Hospital Association v. Harris*, 625 F.2d 1328 (7th Cir., 1980), stated in no

uncertain terms that the relationship between the hospitals receiving Hill-Burton funds and the relevant administrative agencies were of a "contractual nature" and that the same regulations challenged by the Plaintiffs in this case were beyond the original contractual terms.[1]

For Plaintiffs to prevail on this issue, they must show not only the existence of a contract, but also that the statutes and regulations in effect at the time any contract was executed were incorporated into the obligations imposed thereunder. Thus, the existence, *vel non*, of a contract is not necessarily the determinative issue in this case. Rather, it is the authority of the Secretary to define how hospitals must comply with the assurances after the execution of the alleged contracts that will be dispositive. A careful analysis of the applicable statutes and regulations, along with the documents executed in association with the funding program, indicates that the regulations in effect at the time the applications submitted by the hospitals were accepted were not indelibly etched into their agreement. The regulations challenged by the Plaintiffs do not exceed any contractual or regulatory limits when considered in light of the purpose of this Hill-Burton Act and with the breadth of the language contained in the statute and the applications submitted thereunder.

1. *Purposes of the Hill-Burton Act.*

Much has been said, in this case and others, concerning the purpose of the Hill-Burton Act when it was passed by Congress on July 1, 1946. Plaintiffs argue that the basic thrust of the Act was towards the construction and modification of hospital facilities. Thus, they argue, the "uncompensated care assurance" and the "community care assurance" required of the applicants were merely to ensure the availability of hospital care to all citizens of the community and were not intended as broad-

---

**1.** The majority decision in the *American Hospital Association* was limited to affirmation of the district court's decision to deny preliminary injunctive relief on a finding that the American

Hospital Association's member organizations would not suffer irreparable harm pending a final hearing on the merits.

based health care programs for the needy. Judge Pell argued in the same vein in his concurring and dissenting opinion in *American Hospital Association* when he concluded that:

> Clearly no fair reading of the (relevant text of the 1945 Hearings held on the Act) supports the position advanced by the intervenors that Congress intended for the Hill-Burton Act, standing alone, to impose broad indigent care obligations on participating hospitals. Neither does the language of the assurances themselves support such a proposition. 625 F.2d at 1335–6.

Yet, such speculation on the intent of Congress in passing the original version of the Hill-Burton Act fails to surmount the unambiguous and unqualified language of 42 U.S.C. § 291c(e), which requires that:

> (An) assurance shall be received by the State from the applicant that (1) the facility or portion thereof to be constructed or modernized will be made available to all persons residing in the territorial area of the applicant; and (2) there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of services to persons unable to pay therefore, . . .

Upon examination of the same issue in *Euresti v. Stenner*, supra, at 1118, the court reached the following conclusion:

> Thus the legislative history and the expressed purposes of Congress indicate that the Act was passed to ensure that the indigent would be supplied sufficient hospital services when needed. With this clear intent, it is not decisive that the language of the Act included no explicit indication that indigents were to have a right to enforce the Act's provisions.

The subject was again addressed in *Cook v. Ochsner Foundation Hospital*, 319 F.Supp. 603, 606 (E.D.La., 1970).

> In the case at bar, we hold that the Hill-Burton Act is designed, at least in part, to benefit persons unable to pay for medical services. Such people are not the sole beneficiaries of the act, but they certainly are the object of much of the act's concern. We do not feel that it is necessary to delve into the legislative history of the Hill-Burton Act in order to reach this conclusion. Rather, we are of the opinion that the act, by its own terms, makes it plain that persons unable to pay for medical services are one of the chief sets of beneficiaries of this legislation. It is a matter of the clearest logic that the only real beneficiaries of a hospital program are the people who need or may need medical treatment. This includes people of all classes, whether rich or poor.

Thus, the language of 42 U.S.C. § 291c(e), when considered with the conclusions reached by the above two courts would indicate that administrative latitude in defining how Hill-Burton assurances are fulfilled is consistent with at least one significant purpose of the Act.

2. *The Secretary's Modification of the Regulations.*

It remains to be seen whether the existence of less stringent compliance standards for the assurances required in 42 U.S.C. 291c(e) at the time the applications were accepted could somehow now preclude the modification of those regulations at a later date. Plaintiffs do not question the delegation of authority made in the original version of the Hill-Burton Act to the Surgeon General, with the approval of the Federal Hospital Council and the Secretary of Health, Education, and Welfare (now Health and Human Services), to promulgate regulations prescribing the manner in which the assurances made would be complied with. This was clearly set forth in the original version of the Act, 42 U.S.C. § 291c(e), and its supplemental provisions passed under Title XVI of the Public Health Service Act enacted in 1975, 42 U.S.C. § 300s(3) (formerly 300o–1(6)). Nor is there any doubt concerning the power of the Secretary of Health and Human Services to modify regulations within the procedural guidelines set forth in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* See *Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939), reh. den.

308 U.S. 638, 60 S.Ct. 292, 84 L.Ed. 530; *Arizona Grocery Co. v. Atchison T. & S. F. R. Co.*, 284 U.S. 370, 52 S.Ct. 8, 76 L.Ed. 515 (1931); *American Trucking Assn. v. United States*, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1952).

■ The more difficult issue is whether the same authority exists to modify the compliance standards if the relationship could be characterized as contractual. If indeed a contract exists and the law in effect at the time the contract was executed has become a part of the contract, the relevant portions of the Hill-Burton Act that were incorporated into its terms granted the Surgeon General (or Secretary, after 1966) the authority to set specific compliance guidelines at a later date. Although Congress did not specify in 42 U.S.C. § 291c(e) exactly how the assurances were to be enforced, it can hardly be said that Congress would have authorized the establishment of such assurances without delegating the power to ensure compliance. Where a delegation of power is made to an administrative agency, the authority to take appropriate action to effectuate that power will be implied. *Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Northern States Power Co. v. Federal Power Com.*, 118 F.2d 141 (7th Cir., 1941); *Gallagher's Steak House v. Bowles*, 142 F.2d 530 (2d Cir., 1944). Given the authority to take reasonable actions to implement and enforce the assurances mentioned in 42 U.S.C. § 291c(e) it does not seem logical to oblige the Defendants, as would the Plaintiffs, to abide by a course chosen at the time of application without regard to whether subsequent events proved it to be a wise one. Nor is it any more logical to allow an administrative agency to contract away the authority that was properly created by legislative mandate. Yet, this is the result that the Plaintiffs ask the Court to reach.

■ To the extent any ambiguity exists as to how the assurances were to be enforced, Congress provided the clarification with the passage of Title XVI of the Public Health Service Act, 42 U.S.C. § 300q *et seq.*

(Supp. III 1980) (formerly 42 U.S.C. § 300*o et seq.*). Included in Title XVI is § 300*o* –1(6), which grants the Secretary the authority to prescribe by regulation

the manner in which each entity which receives financial assistance under this title (Title XVI) or has received financial assistance under this title or title VI shall be required to comply with the assurances required to be made at the time such assistance was received and the means by which such entity shall be required to demonstrate compliance with such assurances.

Although subsequent legislation is not conclusive as to the interpretation of an ambiguous portion of a statute, "the later law is entitled to weight when it comes to the problem of construction." *F.H.A. v. Darlington*, 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132 (1958). As stated in *Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969):

Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction. And here this principle is given special force by the equally venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction. 395 U.S. at 380–81, (Footnotes omitted.)

■ There seems to be no apparent reason why the agency interpretation of an ambiguous statutory provision should be given less credence in a contractual context than it would be as a matter of administrative law. The fact that Congress saw fit to affirm the Secretary's authority to mandate compliance standards with the passage of 42 U.S.C. § 300*o* –1(6) in 1974 as part of the Public Health Service Act adds weighty support to the agency's interpretation of the Hill-Burton Act. This construction of the Secretary's authority seems particularly appropriate in light of the legislative intent discussed in *Euresti* and *Corum*.

Plaintiffs urge the Court to construe 42 U.S.C. § 300o–1(6) * as an acknowledgment by Congress that the requirements for compliance with the Hill-Burton assurances are to be viewed in the sole context of the regulations existing at the time the assurances were made. They claim support in language contained in § 300o–1(6) which states that the Secretary shall prescribe regulations setting forth the manner of compliance "with the assurances required to be made at the time such assistance was received." To so construe the statute would require the rendition of the first part of the provision designating the regulation of hospitals that *will or have received* Hill-Burton funds inoperative. This is contrary to well-established rules of statutory construction and the unequivocal meaning of § 300o–1(6). See *Reiter v. Sonotone Corp.*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979); *United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955). Furthermore, as pointed out in the Defendants' Cross-Motion for Summary Judgment, to adopt the interpretation suggested by the Plaintiffs would impute an intention by Congress to authorize the issuance of standards already in effect and render the statute substantially meaningless.

Additionally, as noted in *Austin Welfare Rights Org. v. St. Davids Community Hospital*, No. A–78–CA–63 (W.D. Texas, March, 1980) (unpublished slip opinion), approval of a hospital's application for Hill-Burton funds was made conditional in 42 U.S.C. § 291e(b)(3) on the presence in the application of "an assurance that in the operation of the project there will be compliance with the applicable requirements of the regulations prescribed under (42 U.S.C. § 291c(e))." Thus, the court held that, "This statutory provision is sufficient to put the hospital on notice that new or additional regulations to which it would be subject might be promulgated in the future." This is supported by the holding of *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), which involved an eviction ordered in a state court prior to the enactment of the Price Control Act, under which regulations had been issued which prohibited the removal of a tenant under the grounds asserted by the landlord. In language pertinent to this case, the Supreme Court stated:

So long as the Constitution authorizes the subsequently enacted legislation, the fact that its provisions limit or interfere with previously acquired rights does not condemn it. Immunity from federal regulation is not gained through forehanded contracts. 331 U.S. at 107, 67 S.Ct. at 1144.

*Fleming* was relied on in *F.H.A. v. The Darlington, Inc.*, 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958), where it was held that, "Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end."

The fact that the new regulations might be incongruent with the state statutes and regulations governing the same subject matter is of no significance with regard to the validity of the regulations. Agency regulations promulgated on the federal level are given the force of federal statutory law and thus similarly have the power of the Supremacy Clause. *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); *Public Utilities Commission of Calif. v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). Given the power of the Secretary to regulate as is deemed necessary in a contractual setting or otherwise, it cannot be said that the existence of the state regulatory scheme can impede that power.

Considering the breadth of 42 U.S.C. § 291c(e) in establishing the authority to require and enforce assurances by hospitals that apply for Hill-Burton funding, it cannot be said that the Secretary, or the Surgeon General before him, was bereft of the power to seek a reasonable means of compliance. To the extent that a contract may exist, an issue this Court will leave for another day, the obligations created therein

---

* 42 U.S.C. 300o–1(6) is set forth on the preceding page.

were indeed governed at least in part by 42 U.S.C. § 291c(e). As a matter of statutory, and thus contractual, interpretation, there can be no doubt that the authority was delegated to insure compliance by any reasonable means properly derived under the administrative process. There being no allegation as to any breach of the regulatory process described in the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, there can be no breach of contract.

## THE CONSTITUTIONALITY OF THE 1979 REGULATIONS AND THEIR VALIDITY UNDER 5 U.S.C. 706(2)(B)

■ The constitutional issues raised by the Plaintiffs include the alleged violation of the Due Process Clause of the Fifth Amendment for impairment of contract and retroactive application of the new regulations. Although Plaintiffs have included in this category their claim that the regulations exceed or are contrary to statutory authority, the discussion of this argument will be reserved for the consideration of the Plaintiffs' case under the Administrative Procedure Act in the next section of the Order.

As to whether the new regulations could be considered an impairment of contract sufficient to run afoul of the Due Process Clause of the Fifth Amendment, guidelines used in determining whether an impairment might exist must be examined. These standards were set forth in *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

> The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them (*Sturges v. Crowninshield*, 4 Wheat. [122] PP. 197–8, 4 L.Ed. [529] 549), and impairment, as above noted, has been predicated of laws which without destroying contracts derogate from substantial contractual rights. 290 U.S. at 431, 54 S.Ct. at 237. (Footnotes omitted.)

On consideration of the same issue in *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the court upheld the imposition of a notification procedure for eviction from a public low-rent housing project by HUD. The court first relied on *Penniman's Case*, 103 U.S. 714, 26 L.Ed. 602 (1881) and quoted the following language:

> (I)n modes of proceeding and forms to enforce the contract the legislature has the control, and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right.

The *Thorpe* court went on to state in footnote 35 that:

> We have consistently upheld legislation that affects contract rights far more substantially than does the HUD (requirement). (Examples omitted.)

> \* \* \* \* \* \*

> There is no reason why the principles that control legislation that affects contractual rights should not also control administrative rule making that affects contractual rights. (Examples omitted.)

Thus, even if a contract could be found on the acceptance of the Plaintiffs' applications for Hill-Burton funding, it cannot be said that the new regulations impose additional obligations which reach or exceed the benchmark set by the cases cited above. This is particularly so in light of the finding in the preceding section that, even if a contract does exist, it was not breached by the establishment of new compliance standards for the assurances made.

■ With regard to the Plaintiffs' contention that the regulations are constitutionally infirm as retroactively applied, an examination of cases defining retroactive legislation shows that the point is not well taken. For example, in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Black Lung Benefits Act of 1972 was challenged as a violation of due process in that it imposed on coal mine operators liability for disability compensation to former employees whose employment had terminated before the Act was passed. In upholding the legislation, the court noted that:

To be sure, insofar as the Act requires compensation for disabilities bred during employment terminated before the date of enactment, the Act has some retrospective effect ... And it may be that the liability imposed by the Act for disabilities suffered by former employees was not anticipated at the time of actual employment. But our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. (Citations omitted.) This is true even though the effect of the legislation is to impose a new duty or liability based on past acts. (Citations omitted.) 428 U.S. at 15–16, 96 S.Ct. at 2892.

The fact that administrative regulations, rather than statutes are involved here makes no difference. *Thorpe v. Housing Authority of the City of Durham*, supra. See also, *Summit Nursing Home, Inc. v. United States*, 572 F.2d 737 (Ct.Cl.1978); *Springdale Convalescent Center v. Mathews*, 545 F.2d 943 (5th Cir., 1977).

## THE PLAINTIFFS' ARGUMENT THAT THE REGULATIONS ARE IN EXCESS OF STATUTORY AUTHORITY UNDER 5 U.S.C. § 706(2)(C)

Plaintiffs contend that the challenged regulations may be stricken under 5 U.S.C. § 706(2)(C) as being "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." In so arguing, Plaintiffs have chosen to stand on the issues raised by the American Hospital Association in its suit against the same Defendants and now pending before the United States District Court for the Northern District of Illinois, Eastern Division. To the extent these arguments address the propriety of the Secretary's action in light of the Hill-Burton Act, a review of the relevant administrative law is warranted.

■ Where regulations produced by an administrative agency through its informal rulemaking powers are challenged on a substantive level, the scope of review granted a federal court under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, is narrow.

This is particularly so when the administrative proceeding or the hearing record are not challenged. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *National Assn. of Food Chains, Inc. v. ICC*, 535 F.2d 1308 (D.C.Cir., 1976); *Office of Com. of United Church of Christ v. FCC*, 560 F.2d 529 (2d Cir., 1977). A court's review must be even more circumspect where the nature of the rulemaking can be considered legislative, rather than interpretive. *Shell Oil Co. v. Federal Power Commission*, 491 F.2d 82 (5th Cir., 1974). Here, the challenged regulations were enunciated under a statutory delegation to the administrative agency and are thus considered legislative rules entitled to deference similar to that given statutes passed by Congress. *Baker v. Otis Elevator Co.*, 609 F.2d 686 (3d Cir., 1979). Those cases cited in the American Hospital Association brief (pp. 80–82) as examples of instances in which courts have found agency rules in excess of statutory authority involved interpretive rules or situations where an administrative agency was clearly outside of its statutory delegation. Such is not the case here.

■ Furthermore, this Court's review of the administrative action challenged must be limited to the record before the agency at the time the decision was made and additional evidence may not be considered. *National Broadcasting Co. v. United States*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1942); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). As stated in *Citizens to Preserve Overton Park*, independent judicial fact finding may only take place where "issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." (401 U.S. at 415, 91 S.Ct. at 823.) The Plaintiffs have not attacked the manner in which the 1979 regulations were promulgated and this is not a proceeding to enforce nonadjudicatory agency action. Thus, the Plaintiffs have not raised an issue sufficient to allow this Court the liberty of examining additional evidence.

Much is made by the Plaintiffs of the incongruencies between the challenged regulations and the Wyoming regulatory scheme, along with the hardships that will inevitably be imposed on the Plaintiff hospitals if the regulations remain in effect. The Court is not insensitive to the difficulties that face the Plaintiffs in adhering to the new rules as well as the relative success achieved by Wyoming hospitals in complying with the assurances they made under the Hill-Burton Act through regulation on the state level and their own initiative. The regulations in question are clearly unsuited to Wyoming's hospitals and its population which requires indigent hospital services; the "open door" regulations were far more reasonable and fair. But, it is well-established that a reviewing court may not inquire into the reasonableness or wisdom of an administrative agency. Nor can it substitute its judgment for that of the administrative agency, even though the court may have reached a different decision on the same facts. See *Graham v. National Trans. Safety Board*, 530 F.2d 317 (8th Cir., 1976); *Simeon Management Corp. v. FTC*, 579 F.2d 1137 (9th Cir., 1978). To the extent that the regulations are challenged by the Plaintiffs and indirectly by the American Hospital Association, as unreasonable, unworkable, or unwise, they extend an invitation to this Court to act beyond the boundaries of its jurisdiction. The invitation must be declined.

Having incorporated the American Hospital Association's argument that the new regulations are extralegal as contrary to a specific statute and thus beyond the agency's "statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(C), an issue has been raised of which the Court may take cognizance. The argument centers around the wording of 42 U.S.C. § 291m, which reads as follows:

Except as otherwise specifically provided, nothing in this title shall be construed as conferring on any Federal officer or employee the right to exercise any supervision or control over the administration, personnel, maintenance, or operation of any facility with respect to which any funds have been or may be expended under this title.

From this, it is argued that the detailed regulations covering the standards and procedures of admission along with other intrusions into the financial, administrative, and medical operations of the hospital are clearly outside of the agency's authority. The argument must fail.

Although § 291m appears to circumscribe an agency's power to affect the manner in which the affairs of a hospital are run, the provision is qualified by the phrase, "Except as otherwise specifically provided..." The issue then becomes one of determining whether 42 U.S.C. § 291c(e) creates an exception to § 291m for purposes of ensuring compliance with the Hill-Burton assurances. This is a matter of statutory interpretation. For guidance in determining the validity of the Secretary's regulations issued under § 291c(e), the Court turns to the language of *Baur v. Mathews*, 578 F.2d 228 (9th Cir., 1978).

The administrative agency clothed with responsibility for implementing congressional pronouncements is generally well acquainted with the policy of the statute it administers. This is particularly true when the agency has long been involved in the construction and administration of a given statute or its predecessors. Where, as here, the agency has extensive experience, has relied on the common meaning of the relevant statute's specific language, and can point to important congressional purposes furthered by its interpretation, only a clear showing of a contrary intent by Congress will justify overruling the agency's regulations. 578 F.2d at 233.

As stated above 42 U.S.C. § 291c(e) represents a delegation of power by Congress to require assurances as a condition to receiving Hill-Burton funds. Given this delegation, the authority to take whatever action is required to insure their fulfillment is implied. (See cases cited, *supra*.) Once such authority is established, there remains

the problem of the extent of the delegation. This is resolved by examining the factors elucidated in *Baur v. Mathews, supra.* As to "important congressional purposes," the Tenth Circuit United States Court of Appeals found that at least one significant purpose of the Hill-Burton Act was to "ensure that the indigent would be supplied sufficient hospital services when needed." *Euresti v. Stenner, supra.* Other courts have followed suit. *See Cook v. Ochsner Foundation Hospital, supra; Corum v. Beth Israel Medical Center, supra.* These interpretations are clearly consistent with the language of 42 U.S.C. § 291c(e).

With the passage of Title XVI of the Public Health Services Act, 42 U.S.C. § 300q *et seq.,* (Supp. III 1980), specifically granting the Secretary the authority to regulate how the Hill-Burton assurances would be complied with, Congress affirmed the issuance of necessary regulations in pursuit of the goals articulated in *Euresti, Cook,* and *Corum.*

It is also worth noting that the regulations have been in effect over two years. The fact that Congress has taken no action which might work a repeal or nullification of the regulations and that it implicitly affirmed similar agency action upon its passage of the Public Health Service Act of 1974 is of some significance. See *National Muffler Dealers Assn. v. United States,* 440 U.S. 472, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979); *FHA v. The Darlington, Inc.,* 358 U.S. 84, 79 S.Ct. 310, 3 L.Ed.2d 311 (1958); *Red Lion Broadcasting Co., Inc. v. FCC,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

Finally, there is the language of 42 U.S.C. § 291e(b)(3), which, as a requisite for approval, mandates a finding that the application form submitted by a hospital contains an assurance that "in the *operation of the project* there will be compliance with the applicable requirements of the regulations prescribed under (42 U.S.C. § 291c(e)..." (Emphasis added.) This provision, combined with the language of § 291c(e), regarding the assurances required, is sufficient to meet the "Except as otherwise spe-

cifically provided," qualification of 42 U.S.C. § 291m. It cannot be said that the regulations in question were promulgated in excess of "statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(C).

For the foregoing reasons the Court finds that Plaintiffs have failed to state grounds upon which this Court could overturn the challenged regulations under 5 U.S.C. § 706 as a matter of contract, constitutional, or administrative law. Absent such a showing, it is not within the province of this Court to go beyond the boundaries set by the Administrative Procedure Act to reexamine the propriety of these rules promulgated by the Department of Health and Human Services. NOW, THEREFORE, it is hereby

ORDERED that the Motion for Summary Judgment filed on behalf of the Plaintiffs be, and the same hereby is, denied. It is further

ORDERED that the Cross-Motion for Summary Judgment filed on behalf of the Defendants be, and the same hereby is, granted, and that this case be dismissed with prejudice.