WYOMING HOSPITAL ASSOCIATION, Bishop Randall Hospital, Campbell County Memorial Hospital, Community Hospital, Converse County Memorial Hospital, De Paul Hospital, Fremont County Memorial Hospital, Hot Springs County Memorial Hospital, Ivinson Memorial Hospital, Johnson County Memorial Hospital, Memorial Hospital of Carbon County, Memorial Hospital of Laramie County, Memorial Hospital of Natrona County, Memorial Hospital of Sheridan County, Memorial Hospital of Sweetwater County, Niobrara Memorial Hospital, Platte County Memorial Hospital, Powell Hospital, T.C.H.D.—St. John's Hospital, Uinta County Memorial Hospital, Washakie Memorial Hospital, Weston County Memorial Hospital, West Park County Hospital District, Plaintiffs-Appellants,

v.

Patricia R. HARRIS, Secretary of the United States Department of Health and Human Services, and the United States Department of Health and Human Services, Defendants-Appellees.

No. 81–2469.

United States Court of Appeals,
Tenth Circuit.

Feb. 6, 1984.

Rehearing Denied March 9, 1984.

Franklin D. Bayless of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, Wyo. (James H. Barrett, Cheyenne, Wyo., with him on the brief), for plaintiffs-appellants.

John Daniel Kiser, Senior Atty., Public Health Div., Office of the Gen. Counsel, Dept. of Health and Human Services, Rockville, Md. and Patricia Wilkins Bobo, Atty., Civil Rights Div., Washington, D.C. (Richard J. Riseberg, Asst. Gen. Counsel, Donald N. Young, Chief, HSA/HRA Branch, Public Health Div., Rockville, Md., Albert Hamlin, Asst. Gen. Counsel, Robin Epstein Schneider and Thomas E. Herrmann, Senior Attys., Civil Rights Div., Washington, D.C., on the brief), for defendants-appellees.

Before SETH, Chief Judge, SEYMOUR, Circuit Judge, and CHILSON, District Judge *.

---

* Honorable Olin Hatfield Chilson, United States Senior District Judge for the District of Colorado, sitting by designation.

SETH, Chief Judge.

This is an appeal of the order of the trial court, 527 F.Supp. 551, denying the plaintiffs' motion for summary judgment and granting the defendants' cross-motion for summary judgment. The Wyoming Hospital Association, on behalf of its institutional members, and twenty-two individual hospitals brought this suit seeking declaratory and injunctive relief from enforcement of regulations issued under the "Hill-Burton" hospital construction assistance program. The regulations were issued pursuant to Title VI and Title XVI of the Public Health Service Act, 42 U.S.C. §§ 291–291o–1 and §§ 300q–300s–6, and are codified at 42 C.F.R. § 124, subparts F and G.

The Hill-Burton Act was intended to assist in the "construction and modernization of such public or other nonprofit community hospitals ... as may be necessary ... to furnish adequate hospital ... services to all ... people." 42 U.S.C. § 291(a). To obtain assistance under the Act, states were required to submit a plan to the Surgeon General which furthered the purposes of the Act. 42 U.S.C. §§ 291c, 291d.

Two of the assurances required of the state plan form the gravamen of this suit. These two assurances are known respectively as the "community service assurance" which ensures medical treatment to all persons residing in the territorial area of the hospital who apply for assistance and the "uncompensated care assurance" which requires that a reasonable volume of medical services will be given to those persons unable to pay for the services. 42 U.S.C. § 291c(e).

The early regulations issued pursuant to § 291c(e) did not define what was a "reasonable volume of services" or the eligibility requirements for free care. In 1972, the Department of Health, Education and Welfare issued regulations which defined presumptive compliance with the "reasonable volume" provision. Those regulations allowed a Hill-Burton facility to elect either to adhere to a minimum percentage formulation or to adopt an "open door" policy. The minimum percentage option allowed compliance if the facility provided yearly uncompensated care at either a level of three percent of its operating costs or at a level of ten percent of the amount of the federal assistance. The "open door" policy provided that the hospital could certify that it would treat any person regardless of his ability to pay. Under that policy, the hospital would perform the services without charge or would charge only such an amount as the patient could afford. The hospital was not required to perform any minimum amount of such services. All of the hospitals in this suit elected to comply under the "open door" policy.

In 1979, the Secretary promulgated new regulations. The plaintiffs acknowledge that the regulations were issued in accordance with the Administrative Procedure Act. The 1979 regulations that are at issue here are significantly different from the 1972 regulations. Subpart F deletes the "open door" option. The three percent/ten percent option is retained, but is made subject to inflation for each year after 1979. Also, reimbursements from insurance programs or Medicare or Medicaid and amounts in excess of the payments the hospitals are entitled to receive under such programs cannot be applied toward uncompensated care obligations. The obligations of Subpart F are not durationally limited.

The 1979 Subpart G regulations concern the community service assurance and seek to prevent a hospital from refusing services on any ground unrelated to an individual's need. Subpart G also describes impermissible policies which could exclude certain patients. If the hospital has complied with its Subpart F uncompensated service obligations, then it may deny service to those unable to pay for it. Compliance with the Subpart G regulations is required in perpetuity.

■ The plaintiffs first contend on appeal that the 1979 regulations exceed the Secretary's statutory authority. Regulations must be set aside if they are arbitrary, capricious or an abuse of discretion, 5 U.S.C. § 706(2)(A), or if the agency has acted in excess of its statutory jurisdiction,

5 U.S.C. § 706(2)(C). Deference is accorded administrative regulations. *Conway v. Watt,* 717 F.2d 512 (10th Cir.). This court has frequently applied the "rational basis" standard to agency actions. *Anderson v. U.S. Dept. of Housing and Urban Development,* 701 F.2d 112 (10th Cir.); *CF & I Steel Corp. v. Economic Development Administration,* 624 F.2d 136 (10th Cir.). That standard is applicable here. *See American Hospital Ass'n v. Schweiker,* 721 F.2d 170 (7th Cir.); *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1 (D.C.Cir.).

■ The Secretary was and is given broad authority under the Hill-Burton Act to promulgate general regulations. 42 U.S.C. § 291c. That authority extends to regulating the hospitals' community service assurance and uncompensated care assurance.

As to the Subpart F regulations which apply to the uncompensated care assurance, plaintiffs contend that these are onerous, overly rigid, and that they are not rationally related to the services provided by the hospitals. The plaintiffs object to the volume of care mandated and to the lack of alternatives if fulfillment of the uncompensated care requirements is not financially feasible.

■ The regulations provide, as mentioned, that hospitals must provide uncompensated care equal to either three percent of their operating costs or to ten percent of the amount of the Hill-Burton funding for twenty years. Adjustments for inflation are also made. The hospitals contend that they may be forced to repay 200 percent of the funding amount plus the inflation adjustment, and that such a repayment is unduly burdensome. However, the uncompensated care standards represent the considered reaction of the Secretary to the failure of the "open door" policy. As mentioned, the "open door" policy in theory required hospitals to admit all needy patients. In practice, insufficient uncompensated care was given in some instances. *See, e.g., Euresti v. Stenner,* 458 F.2d 1115 (10th Cir.). The Secretary developed more specific standards to see that a reasonable

volume of uncompensated care is provided. *See American Hospital Ass'n v. Schweiker,* 721 F.2d 170 (7th Cir.).

The plaintiffs also contend the regulations to be onerous because the uncompensated service volumes are carried over if not fully complied with in a given year. The carryover provisions are again a method of ensuring that a reasonable volume of services is provided. The regulations are not in conflict with the statutory provision that "an exception shall be made if such a requirement is not feasible from a financial viewpoint." 42 U.S.C. § 291c(e). As the Seventh Circuit has stated, that provision "does not mandate a total waiver of the uncompensated care obligation when a facility is unable to pay." *American Hospital Ass'n v. Schweiker,* 721 F.2d 170 (7th Cir.).

The plaintiffs claim that the Secretary's elimination of the "open door" provision was arbitrary and capricious. However, the Secretary was under statutory mandate to see that a reasonable volume of uncompensated care was provided. Because monitoring compliance under the "open door" option was at least difficult, the Secretary promulgated levels of presumptive compliance in the exercise of his discretion. His deletion of an "open door" option developed certainty in compliance and fairness, and was well within his authority.

The plaintiffs urge also that the regulations apply to services in the hospital that have no connection with the facilities constructed by the Hill-Burton funds. Title VI provides that "there will be made available in the facility or portion thereof to be constructed or modernized a reasonable volume of [uncompensated care]." 42 U.S.C. § 291c(e). The statute is framed in the disjunctive; the hospital may provide uncompensated care either in the portion of the hospital constructed or modernized by the Hill-Burton funds or in other parts of the hospital. Neither the statute nor the regulations compel a hospital to offer its entire facility for uncompensated care. However, the hospital cannot thwart the "reasonable volume" provisions by limiting care to certain parts of its facilities. *Corum*

*v. Beth Israel Medical Center,* 359 F.Supp. 909 (S.D.N.Y.).

The plaintiffs next argue that the regulations wrongfully exclude certain credits for uncompensated care. Section 124.502 of the regulations adopts the Medicare definition for measuring reimbursable costs. The statute requires that the hospitals provide a reasonable *volume* of services, not a dollar amount of services. The Secretary's decision to so limit the uncompensated care credit is rationally based and within his discretion.

We have considered other objections by plaintiffs and find them to be without merit.

We therefore conclude that the Subpart F regulations are within the Secretary's authority and are rationally based.

■ The Subpart G regulations relate to the "community service" assurance. The plaintiffs object to the regulations as being in excess of statutory authority, contrary to the legislative intent, and that the regulations wrongfully regulate hospital admissions and the practice of medicine.

The community service assurance (42 C.F.R. § 124.603) provides that the facility shall be made available

"to all persons residing ... in the facility's service area without discrimination on the ground of race, color, national origin, creed, or any other ground unrelated to an individual's need for the service or the availability of the needed service in the facility."

The regulations also provide that a hospital may deny service to indigents if the hospital has fulfilled its uncompensated care requirement.

The plaintiffs argue that the statute requiring the community service assurance was intended only to counter discrimination and that the detailed regulations promulgated thereunder are in excess of that authority. The language of § 291c(e) is unambiguous. It provides that "the facility or portion thereof to be constructed or modernized will be made available to all persons residing in the territorial area of the appli-

cant." That the hospital may have to take certain affirmative steps to ensure their treatment is well within the statutory purview. The community service obligation is not limited to traditional anti-discrimination concerns. Moreover, we are not troubled by the fact that the community service obligations are perpetual under the regulations. The statute is not durationally limited nor can any limitation be implied. *Lugo v. Simon,* 426 F.Supp. 28, 36 (N.D.Ohio).

The plaintiffs' argument that the Subpart G regulations constitute an impermissible regulation of hospital admissions and the practice of medicine is without merit. While the regulations do not require the hospital to take affirmative steps to comply with the community service assurance they are not violative of the provisions of § 291m. Section 291m proscribes federal control over the administration and operation of any recipient facility. An exception allows the government to exercise control over the facilities if that control has been specifically authorized by statute. Section 291c(e) which requires that the facilities be made available to all residents constitutes just such an exception.

We therefore conclude that the Subpart G regulations are within the Secretary's statutory authority and are rationally based.

■ The plaintiffs raise two constitutional challenges to the regulations. The plaintiffs claim that the regulations impermissibly impair the hospitals' contractual rights by adding conditions to which they did not assent at the time they received the funds. The trial court declined to reach the question as to whether a contract existed between the federal government and the hospitals, preferring to hold that whatever obligations existed between the government and the hospitals were "governed at least in part by 42 U.S.C. § 291c(e)." We agree. The distinction between whether the Hill-Burton funding was contractual in nature or made pursuant to the government's authority under the spending clause is not necessary to our decision. The obligations under § 291c(e) for community service and

the assurance of a reasonable volume of uncompensated care were extant at the time funding was made. So too was the requirement of compliance with regulations issued pursuant to § 291c. 42 U.S.C. § 291e(b). Thus, any Hill-Burton funding was made expressly subject to compliance with the regulations issued under § 291c(e).

That the Secretary's discretion under § 291c is broad and open-ended does not impair the hospitals' rights. If the regulations are rationally related to the statute and in compliance with the Administrative Procedure Act, the fact that they upset the expectations of the parties does not condemn them. *F.H.A. v. The Darlington, Inc.,* 358 U.S. 84, 79 S.Ct. 141, 3 L.Ed.2d 132. *Cf. Fleming v. Rhodes,* 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368. As we held above, the regulations comport with this standard.

The current regulations may be more stringent than previous regulations issued under § 291c(e), but as the court noted in *The Darlington,* "Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132. *See also American Hospital Ass'n v. Schweiker,* 721 F.2d 170 (7th Cir.). Consequently, we hold that a change in the regulations does not constitute an unconstitutional impairment nor is it a wrongful derogation of the plaintiffs' due process rights.

The plaintiffs' claim that the regulations are constitutionally infirm as retroactively applied is not well founded. While the regulations may not be in accord with the hospitals' expectations of how the assurances would be enforced, "[s]uch inconsistencies are not equivalent to unconstitutionality." *Springdale Convalescent Center v. Mathews,* 545 F.2d 943, 955 (5th Cir.). *See also Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752.

We have considered the remainder of the plaintiffs' legal and procedural arguments and find them to be without merit.

It is therefore the judgment of this court that the order of the trial court denying the plaintiffs' motion for summary judgment and granting the defendants' cross-motion for summary judgment is affirmed.