NISH AND GOODWILL SERVICES,
INC., Plaintiffs,

v.

William S. COHEN, Secretary of
Defense, et al., Defendants.

No. Civ.A. 99–1632–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 1, 2000.

John S. Pachter, Smith, Pachter, McWhorter & Dambrosio, Vienna, Virginia, for plaintiff.

Arthur Peabody, United States Attorney's Office, Alexandria, Virginia, for defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This case involves interpretation of the Randolph–Sheppard Act (the "Act") and its applicability to appropriated fund contracts for military mess hall services. *See* 20 U.S.C.A. §§ 107–107f (West 2000). Currently, seven third-party applicants ("Applicants") or "Intervenors") seek intervention on behalf of Defendants in an effort to establish adequate representation for blind business vendors employed by the federal government under the auspices of the Act. The issue before the Court is whether Applicants may intervene in this action as third parties with an "interest relating to the [controversy]" strong enough that "disposition of the action may ... impair or impede [their] ability to protect that interest." FED.R.CIV.P. 24(a)(2). For the reasons stated below, the Court opines that Applicants meet the requisite criteria and will be allowed to restrictively intervene in the present controversy.

## I. BACKGROUND

Applicants are citizen advocacy organizations and government entities that represent the interests of blind business vendors licensed under the Randolph–Sheppard Act. They include all of the following groups, each of which has filed a motion to intervene in the present action: (1) Randolph–Sheppard Vendors of America; (2) American Council of the Blind; (3) National Educational and Legal Defense Services for the Blind; (4) Virginia Facilities Vendors Council; (5) National Federation of the Blind; (6) Texas Commission for the Blind; and (7) Oklahoma Department of Rehabilitation Services.[1]

The Act is a federal statute designed to ensure that the maximum number of vending facilities are operated by licensed blind individuals on federal and other property. The Act and its implementing regulations require that one or more vending facilities owned or operated by blind entrepreneurs be established on each federal property. *See* 20 U.S.C.A. § 107(b)(2) (West 2000); 34 C.F.R. § 395.30(a) (1999). The extension of the Act in 1974 to include military dining facilities created an opportunity for blind business owners to develop managerial and entrepreneurial skills.

In the present case, Plaintiffs NISH and Goodwill Services, Inc. ("Plaintiffs") seek a declaratory judgment that the Act does not apply to contracts for the operation of mili-

---

1. For the sake of judicial economy, Applicants' several intervention motions are consolidated into this one disposition.

tary mess hall services. Not including the aforementioned Applicants, the United States Department of Defense and the United States Department of the Army are the only named Defendants in the suit.

## II. STANDARD OF REVIEW

FRCP 24(a)(2) reads:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action:

(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED.R.CIV.P. 24(a)(2).

■ An applicant is entitled to intervention of right if the applicant can demonstrate the following: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired without intervention; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. *See Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir.1991); *see also Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir.1981). A district court is entitled to the full range of reasonable discretion in determining whether these requirements are met. *See Rios v. Enterprise Ass'n Steamfitters Local Union No. 638 of U.A.*, 520 F.2d 352, 355 (2d Cir. 1975).

■ Nonetheless, a mere "general" interest in the subject matter of the litigation will not constitute a protectable interest within the meaning of FRCP 24(a)(2). *See Dairy Maid Dairy, Inc. v. United States*, 147 F.R.D. 109, 111 (E.D.Va.1993). Instead, to be protected, the "intervenor's claim must bear a close relationship to the dispute between the existing litigants and ... be direct, rather than remote or contingent." *See id.* (citing 3B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 24.07[2] ).

## III. DISCUSSION

■ Guided by FRCP 24(a)(2) and the Fourth Circuit precedent outlined above, the Court finds that Applicants' adequately satisfy the benchmark for federal intervention.

### A. *Interest in the Subject Matter of the Action*

To begin, it is clear from the pleadings that Applicants have a direct interest in the subject matter of the case. One of the primary goals each organization shares is promoting the welfare of the blind. Each advocacy organization's membership includes blind business owners who have been awarded military dining contracts in the past and prospective blind business owners who intend to bid on such contracts in the future. The income and future job opportunities of these members are, in many ways, contingent on the outcome of this action. For example, Plaintiffs' success in their quest for injunctive and declaratory relief could potentially reduce both the number of blind business owner contracts and the number of jobs available to blind people. This reduction would adversely affect earning capacity which, as a consequence, could directly and negatively impact each of the Applicants—including the state government entities applying for intervention. *See generally Feller v. Brock*, 802 F.2d 722, 729 (4th Cir.1986).

The interests of the state government applicants, however, do not end there. For instance, state licensing agencies are charged with the duty of implementing the Act in their respective states. They must submit bids for the military dining facilities, negotiate with the facilities, and enter into contracts to manage the facilities. As such, only those same state licensing agencies can properly represent the interests of, for example, Texas and Oklahoma, to ensure that the various programs under the Act are conducted in the states' best interests. Moreover, eliminating the current military dining facility agreements between the military and blind licensees could cause considerable financial hardship to the state entity applicants since

each receives a percentage of the net proceeds from these contracts.

Finally, in their Complaint, Plaintiffs seek to enjoin the utilization and application of the Act for *any* military mess hall and dining contracts—not just those located in the Eastern District of Virginia. This fact significantly expands the potential ramifications of the lawsuit to a vast array of blind business owners which, in turn, enlarges Applicants' interests in the litigation and interests in protecting the current interpretation of the Act.

### B. *Impairment of Ability to Protect Interest*

■ The impairment prong of FRCP 24(a)(2) is met when the disposition of the case would, as a practical matter, impair an intervention applicant's ability to protect his interest in the subject matter of the litigation. *See Spring Constr. Co. v. Harris,* 614 F.2d 374, 377 (4th Cir.1980). Here, it appears that the disposition proposed by Plaintiffs would indeed substantially impair Applicants' ability to protect their interest in the Act.

Plaintiffs seek to establish a binding precedent that the Act is not applicable to contracts involving appropriated funds for services at military mess halls, and that blind business vendors under the Act are not granted an exception from statutory competition requirements. Because this remedy extends far beyond local contract or mess hall services, it would put blind business vendors nationwide at a practical disadvantage in protecting their interest in the priority they currently enjoy in contracting for military dining services. The precedential impact of such a disposition would radically alter the competitive landscape for blind business vendors seeking to operate mess halls, potentially eliminating them from such contracts. This, in turn, would severely impact Applicants' ability to secure rewarding employment for their members and advocate in general on their behalf.

### C. *Inadequate Representation of the Blind Without Applicants' Intervention*

■ The burden on the applicant of demonstrating a lack of adequate representation is relatively minimal. *See, e.g., Teague,* 931 F.2d at 262; *United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y,* 819 F.2d 473, 475 (4th Cir.1987). With this in mind, for several reasons, it appears that the Secretary of Defense and the Secretary of the Army are unable to adequately represent Applicants' interests in preserving the current reach of the Act.

■ A presumption of adequacy arises when the applicant and an existing party have the same interest or ultimate objectives in the litigation. *See Dairy Maid,* 147 F.R.D. at 112 (citing 3B MOORE ET AL., *supra,* ¶ 24.07[4] ). Under the present circumstances, however, Applicants have succeeded in showing adversity of interests sufficient to overcome the presumption.

First, prior disputes concerning the breadth of the Act illuminate conflicts between the interests of Applicants and the interests of the current government Defendants. For example, in at least one previous case, the Secretary of Defense and the Secretary of the Army have argued for an interpretation of the Act at odds with the construction favored by some of the Applicants. *See Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90, 94–96 (D.C.Cir. 1986).

Additionally, there exists documented dissension within some levels of the Army concerning whether military dining facilities should be subject to the Act. A memorandum issued earlier this year by the Deputy Assistant Secretary of the Army explains that the Army is currently pursuing legislative initiatives to exclude military dining facilities from the Act's applicability. *See* Mem. from Kenneth J. Oscar, Deputy Assistant Secretary of the Army, on Military Dining Facility Solicitations and Contracts 1–3 (Mar. 22, 1999) (Applicants' Reply Br.Ex. A (filed Dec. 29, 1999)). Moreover, in both 1997 and 1998, the Department of Defense sought legislation to amend the Act to exclude military dining facilities altogether from the Act's coverage. *See* Robert R. Humphreys Aff. at 1–3 (Applicants' Reply Br.Ex. B (filed Dec. 29, 1999)). Undoubtedly, Applicants' argument for inadequate rep-

resentation is bolstered by this evidence of divergence amongst, and dissension within, the existing Defendants. Accordingly, their contention that differing opinions may destroy uniformity and, ultimately, compromise adequate representation for blind business vendors is meritorious.

From a strategical standpoint, because the government interests in the case are not identical in many respects to the interests of blind business vendors, the government Defendants are likely to take a different approach to the litigation than Applicants. For example, the government must focus their attention on the national security of all citizens of the United States. Yet, the interests of blind business vendors are often distinct from those of the public at large—and it is only this small visually challenged segment of the population that Applicants, for the most part, seek to protect.

Furthermore, Applicants correctly highlight the government's lower threshold of familiarity with the Act—as compared to advocacy groups such as the several Applicants that have tracked the Act's legislative development over the years. Sole representation by the government, therefore, may not be as zealous and effective as representation strengthened by Applicants' calculated intervention. This potential void is something the government may have already acknowledged in their three correlated responses to Applicants' motions to intervene as defendants. In each response, the government took "no position" with regard to the intervention motions. *Cf.* Federal Defs.' Responses to Applicants' Motions to Intervene as Defs. (filed Dec. 28, 1999, Jan. 6, 2000, and Jan. 21, 2000).

## IV. CONCLUSION

In sum, the litigation will be positively advanced by the clear assertion of a position by the citizen advocacy organizations and interested government entities. Accordingly, Applicants' Motion to Intervene as Defendants in this matter is GRANTED pursuant to the restrictions set forth in the Court's Order below.

## V. ORDER

THIS MATTER is before the Court upon the applications of Randolph–Sheppard Vendors of America, American Council of the Blind, National Educational and Legal Defense Services for the Blind, Virginia Facilities Vendors Council, National Federation of the Blind, Texas Commission for the Blind, and Oklahoma Department of Rehabilitation Services, for leave to intervene in this case pursuant to FRCP 24(a)(2). It appearing to the Court that the motion ought to be granted with certain limits, it is hereby

ORDERED that Applicants' motions to intervene are GRANTED.

In order to advance the discrete interests of the individual applicants, and in the interest of judicial economy, substantive participation in the case by the intervenors will be restricted by the following guidelines:

1. **LEAD COUNSEL:** Intervenors are directed to meet and to confer about the preparation of the case. Intervenors are to elect by majority vote a lead counsel who will be responsible for coordinating all activities of Intervenors in connection with the case and principal spokesperson in court.

2. **LIMITED MOTIONS PRACTICE:** Intervenors are directed to coordinate briefs and submissions on summary judgment motions through lead counsel and only one brief will be submitted to the Court on Intervenors' behalf.

3. **REFERRAL:** Pursuant to Local Rule 72 and FRCP 72(a), this case is referred to United States Magistrate Judge Jones for all non-dispositive pretrial matters. Lead counsel for Intervenors and counsel for the original parties are directed to contact Magistrate Judge Jones's chambers right away to schedule a FRCP 16(a) conference.

4. **FINAL PRETRIAL:** A separate final pretrial conference pursuant to FRCP 16(d) will be held by the Court thirty

days prior to trial to confer with counsel and discuss trial procedures.